UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――

SENECA LAKE GUARDIAN, COMMITTEE
TO PRESERVE THE FINGER LAKES, and
SIERRA CLUB,

                    Plaintiffs,

          v.

GREENIDGE GENERATION LLC,

                    Defendant.

―――――――――――――――――――――

**DECISION AND ORDER**

6:23-CV-06063 EAW

## <u>**INTRODUCTION**</u>

Plaintiffs Seneca Lake Guardian, Committee to Preserve the Finger Lakes, and Sierra Club (collectively "Plaintiffs") bring this citizen suit pursuant to the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1376 (the "Clean Water Act"), alleging that defendant Greenidge Generation LLC ("Defendant" or "Greenidge") is discharging pollutants into Seneca Lake and the Keuka Lake Outlet without a valid permit.  (Dkt. 1). More particularly, Plaintiffs contend that Defendant had a valid permit, but that permit expired on September 30, 2022, and Defendant failed to take steps required by federal law to extend that permit while its renewal application is pending.  (*Id*.).

Currently pending before the Court are four motions: (1) a motion for summary judgment filed by Plaintiffs (Dkt. 10); (2) a motion to opt out of this District's mandatory alternative dispute resolution ("ADR") program filed by Plaintiffs (Dkt. 11); (3) a motion

to dismiss filed by Defendant (Dkt. 13); and (4) a cross-motion for summary judgment filed by Defendant (Dkt. 24).

For the reasons set forth below, the Court grants Defendant's motion to dismiss and denies the remaining motions as moot. More specifically, the Court is not persuaded by the arguments advanced pursuant to Rule 12(b)(1), but it does agree with Defendant that dismissal is warranted pursuant to Rule 12(b)(6).

## BACKGROUND

### I.    The Clean Water Act

To understand the parties' dispute, it is necessary to briefly set forth some legal background regarding the Clean Water Act. The Clean Water Act prohibits the discharge of any pollutant by any person—which is defined to included corporations and other business associations—except in compliance with its terms. *See* 33 U.S.C. §§ 1311(a), 1362(5). "Discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source." *Id*. § 1362(11). "Navigable waters" include tributaries to intrastate lakes. *Id*. § 1362(7); 33 C.F.R. § 328.3.

The Clean Water Act further establishes the National Pollution Discharge Elimination System ("NPDES"), pursuant to which the Environmental Protection Agency ("EPA") Administrator may issue permits for the discharge of pollutants. 33 U.S.C. § 1342(a)(1). States that wish to administer their own discharge permitting programs may seek approval from the EPA Administrator. *Id*. § 1342(b). Permits issued by state permit programs "are for fixed terms not exceeding five years." *Id*. § 1342(b)(1)(B). "States authorized to administer the NPDES program may continue either EPA or State-issued

permits until the effective date of the new permits, _if State law allows_. Otherwise, the facility or activity is operating without a permit from the time of expiration of the old permit to the effective date of the State-issued new permit." 40 C.F.R. § 122.6(d) (emphasis added).

Federal regulations provide that all state permit programs "must have legal authority to implement [certain enumerated Clean Water Act regulations] and must be administered in conformance with each, except that States are not precluded from omitting or modifying any provisions to impose more stringent requirements." 40 C.F.R. § 123.25(a). Among the enumerated regulations are 40 C.F.R. § 122.21(a)-(b), (c)(2), (e)-(k), (m)-(p), (q), and (r) and subparts A, B, D, H, I, J, and N of 40 C.F.R. § 125. In turn, subpart J of 40 C.F.R. § 125 sets forth requirements applicable to cooling water intake structures for existing facilities under § 316(b) of the Clean Water Act. Included within subpart J is 40 C.F.R. § 125.95(a)(1), which provides that "[t]he owner or operator of a facility subject to this subpart whose currently effective permit expires after July 14, 2018, must submit to the Director the information required in the applicable provisions of 40 CFR 122.21(r) when applying for a subsequent permit (consistent with the owner or operator's duty to reapply pursuant to 40 CFR 122.21(d))."

New York operates a state pollutant discharge elimination system ("SPDES"). _See_ N.Y. Env't Conserv. Law § 17-0801. Under New York law, "a permit holder may make written request to the department for the renewal . . . of an existing permit. Such request shall be accompanied by sufficient information supporting the request for the departmental action sought." _Id_. § 70-0115.2. Pursuant to New York's State Administrative Procedures

Act ("SAPA"), "[w]hen a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license does not expire until the application has been finally determined by the agency." N.Y. Admin. P. Act § 401. New York regulations provide that filing for renewal of a SPDES permit "shall be made by the permittee on forms provided by" the New York State Department of Environmental Conservation ("NYSDEC") and must be done at least 180 days prior to the permit's expiration. 6 N.Y. Comp. Codes R. & Regs. § 750-1.16(a).

The Clean Water Act expressly grants to district courts jurisdiction to enforce an effluent standard or limitation and to apply appropriate civil penalties. 33 U.S.C. § 1365(a). The Clean Water Act further provides that "any citizen may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]" *Id.* "Citizen suits play an important role in the Act's enforcement scheme," and "[t]he citizen suit provisions were designed not only to 'motivate government agencies' to take action . . . but also to make citizens partners in the enforcement of the Act's provisions." *Weiler v. Chatham Forest Prods.,* 392 F.3d 532, 536 (2d Cir. 2004) (quoting *Wilder v. Thomas,* 854 F.2d 605, 613 (2d Cir. 1988)). "The purpose of the citizen suit is to stop violations of the Clean Water Act that are not challenged by appropriate state and federal authorities." *Atl. States Legal Found. v. Eastman Kodak,* 933 F.2d 124, 127 (2d Cir. 1991).

II.   __Factual Background__

The following facts are taken from the parties' statements of fact submitted in support of their opposing motions for summary judgment (Dkt. 10-1; Dkt. 24-1), the responses thereto (Dkt. 25; Dkt. 35-1), and the exhibits submitted by the parties. Relevant factual disputes are noted.

Greenidge is the owner and operator of Greenidge Power Generation Station (the "Facility"), an electric generating plant located in Dresden, New York. (Dkt. 10 at ¶¶ 1, 3; Dkt. 25 at ¶¶ 1, 3). The Facility, which was constructed prior to January 17, 2002, discharges effluent into Seneca Lake, an intrastate lake, and Keuka Lake Outlet, a tributary to Seneca Lake. (Dkt. 10 at ¶¶ 4-7; Dkt. 25 at ¶¶ 4-7). The Facility "uses one or more cooling water intake structures with a cumulative design intake flow of more than 2 million gallons per day to withdraw water from Seneca Lake." (Dkt. 10 at ¶ 9; Dkt. 25 at ¶ 9).

On October 1, 2017, NYSDEC issued a SPDES permit (the "Permit") authorizing the facility to discharge pollutants into Keuka Lake Outlet and Seneca Lake. (Dkt. 10 at ¶ 12; Dkt. 25 at ¶ 12). The Permit's term was from October 1, 2017, to September 30, 2022. (Dkt. 10 at ¶ 15; Dkt. 25 at ¶ 15). NYSDEC modified the Permit on October 1, 2019, and September 27, 2022. (Dkt. 10 at ¶ 13; Dkt. 25 at ¶ 13).

On November 9, 2021, NYSDEC sent Greenidge a renewal application to complete. (Dkt. 24-1 at ¶ 1; Dkt. 35-1 at ¶ 1). Greenidge submitted an application to NYSDEC on January 12, 2022, seeking renewal of the Permit. (Dkt. 10 at ¶ 16; Dkt. 25 at ¶ 16). The parties dispute the legal sufficiency and effect of the renewal application. Greenidge continued to discharge pollutants into the Keuka Lake Outlet and Seneca Lake between

October 1, 2022, and December 31, 2022, as well as in January and February of 2023. (Dkt. 10 at ¶¶ 18-19; Dkt. 25 at ¶ 18-19). Indeed, based on representations at oral argument, it is apparent that the discharge continues to this day, while NYSDEC evaluates the renewal application.

On March 28, 2022, Lorraine Gregory, NYSDEC's Bureau of Water Permits Section Chief, sent Greenidge an email indicating that its renewal application was "timely and sufficient for SAPA coverage." (Dkt. 24-7 at 2). On September 27, 2022, NYSDEC issued a "SPDES Permit Fact Sheet" for the Facility in which it stated that on January 12, 2022, NYSDEC "received a timely and sufficient SPDES Renewal Application from the permittee." (Dkt. 24-4 at 39).

## III.   **Procedural Background**

Plaintiffs commenced the instant action on January 24, 2023. (Dkt. 1). On February 21, 2023, Plaintiffs filed their motion for summary judgment and their motion to opt out of ADR. (Dkt. 10; Dkt. 11). Also on February 21, 2023, Defendant filed its motion to dismiss. (Dkt. 13). On February 27, 2023, Defendant filed a response to Plaintiffs' motion to opt out of ADR. (Dkt. 21). On March 22, 2023, Plaintiffs filed their opposition to Defendant's motion to dismiss (Dkt. 23), and Defendant filed its cross-motion for summary judgment (Dkt. 24) and its opposition to Plaintiffs' motion for summary judgment (Dkt. 25).

On March 27, 2023, Riverkeeper, Inc. ("Riverkeeper") filed a motion for leave to file an amicus curiae brief in support of Plaintiffs' motion for summary judgment. (Dkt.

29).    The Court granted Riverkeeper's motion on March 28, 2023, and deemed Riverkeeper's amicus brief filed as of that date.  (Dkt. 31).

Plaintiffs filed a reply in further support of their motion to opt out of ADR on March 30, 2023.  (Dkt. 34).  On April 20, 2023, Plaintiffs filed their combined opposition to Defendant's cross-motion for summary judgment and reply in further support of their motion for summary judgment (Dkt. 35), and Defendant filed its opposition to Riverkeeper's amicus brief (Dkt. 36) and its reply in further support of its motion to dismiss (Dkt. 37).  On May 4, 2023, Riverkeeper filed a reply in further support of its amicus brief. (Dkt. 38).  On May 5, 2023, Defendant filed a reply in further support of its cross-motion for summary judgment.  (Dkt. 39).

The Court heard oral argument on the pending motions on July 18, 2023, and reserved decision.  (Dkt. 41).

## DISCUSSION

### I.    Plaintiffs' Claim

To properly frame the parties' substantive disputes, the Court first sets forth the precise claim asserted by Plaintiffs.  Plaintiffs do not dispute that Defendant submitted a renewal application to NYSDEC more than 180 days before the Permit expired.  Instead, Plaintiffs' contention is that Defendant's renewal application was not "sufficient" as a matter of law, because: it did not contain information required by 40 C.F.R. § 122.21(r); it did not contain information required by 40 C.F.R. § 122.21(g); it did not contain "the information included in EPA NPDES Form 1"; and it did not contain "the information included in EPA NPDES Form 2C."  (*See* Dkt. 1 at ¶¶ 121-129).  According to Plaintiffs,

- 7 -

because Defendant's renewal application did not comply with these federal regulations and did not include these federal forms, it cannot—as a matter of law—suffice to have extended the term of the Permit, and the Permit accordingly expired on September 30, 2022. (*See id.* at ¶¶ 129-130). As such, all discharges from the Facility after that date have been made without a permit and in violation of the Clean Water Act, under Plaintiffs' theory of the case. (*Id.* at ¶ 132).

It is also important to understand what this case is not about. Plaintiffs have expressly disavowed any claim that New York's SPDES program is not in compliance with federal law. In other words, Plaintiffs are not alleging that New York has violated 40 C.F.R. § 123.25(a), which requires that state permit programs "have legal authority to implement [certain enumerated Clean Water Act regulations]" and are "administered in conformance" therewith. To the contrary, Plaintiffs take the position that New York's SPDES program "is designed to comply with the Clean Water Act[.]" (Dkt. 10-3 at 12).

## II.   **Defendant's Motion to Dismiss**

Defendant has moved for dismissal of Plaintiffs' claims for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing: (1) Plaintiffs' claims do not arise under federal law; (2) Plaintiffs have raised a collateral attack on NYSDEC's permitting decision, over which this Court lacks jurisdiction; (3) Plaintiffs did not provide adequate notice of their claim; and (4) Plaintiffs lack standing. Defendant also argues that Plaintiffs have failed to state a claim on the merits pursuant to Rule 12(b)(6) and that Plaintiffs have failed to name a necessary party pursuant to Rule 12(b)(7). For the reasons that follow, the Court concludes that it has jurisdiction over the claims asserted in the

complaint, but that these claims fail on the merits.  The Court does not reach Defendant's argument regarding failure to name a necessary party.

### A.      Legal Standard—Rule 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "When considering a motion to dismiss for lack of subject matter jurisdiction . . ., a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).  In addition, a court is not limited to the allegations in the complaint and can "refer to evidence outside the pleadings," *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002), but it "may not rely on conclusory or hearsay statements contained in . . . affidavits." *J.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004).  "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003) (quotation omitted), *aff'd*, 403 F.3d 76 (2d Cir. 2005).  "Where . . . the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for

lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quotation omitted).

### 1.    Federal Question Jurisdiction

Defendant's first argument is that federal question jurisdiction is lacking in this case, because Plaintiffs' "assertion that Greenidge did not timely submit a complete renewal application . . . is not a basis for a Clean Water Act citizens suit, particularly here where, as the Complaint acknowledges, state law governs the sufficiency of Greenidge's renewal application for purposes of extending its existing SPDES permit."  (Dkt. 13-1 at 11).  The Court is unpersuaded by the contention that it lacks federal question jurisdiction, for the reasons that follow.

As an initial matter, the Court notes that "[i]n the context of the [Clean Water Act], the line between jurisdictional issues and merits issues is at times blurry."  *Red River Coal Co., Inc. v. Sierra Club*, No. 2:17CV00021, 2018 WL 491668, at *4 (W.D. Va. Jan. 19, 2018).  In particular, courts are not always sufficiently careful in distinguishing between subject matter jurisdiction and the scope of the Clean Water Act's citizen suit provisions. *See San Francisco Baykeeper v. Cargill Salt Division*, 481 F.3d 700, 709 n.9 (9th Cir. 2007) ("[T]he 'jurisdiction' of the CWA has nothing to do with the jurisdiction of [the] court.  Baykeeper's complaint alleged that Cargill had violated the CWA by discharging pollutants into the waters of the United States. That colorable allegation clearly gave the district court jurisdiction over the case[.]"); *see generally Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (explaining the importance of distinguishing between "failing to raise a

substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits"); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) ("On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous. Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." (quotation omitted)).   Ultimately, "a district court has subject matter jurisdiction over claims in a citizen suit filed under the Clean Water Act that are based on good-faith allegations of a defendant's ongoing violation of the Act." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 402 (4th Cir. 2011).

Keeping these background legal principles firmly in mind, the Court easily dispenses with Defendant's contention that federal question jurisdiction is lacking. Defendant's jurisdictional argument is, in the main, a merits-based argument.  Plaintiffs contend that the Clean Water Act and its associated federal regulations have been violated by Defendant's discharge of pollutants after September 30, 2022, because the application seeking renewal of the Permit did not comply with various federal standards.  Defendant attacks Plaintiffs' contentions on the ground that state law governs the sufficiency of the renewal application and, thus, according to Plaintiffs, the Court lacks jurisdiction over what it characterizes as an issue involving the interpretation of state law.  (*See* Dkt. 13-1 at 13 ("the Clean Water Act's citizen suit provision does not provide subject matter jurisdiction over the interpretation of state law")).

However, the Court's ultimate agreement with Defendant's position regarding the governing standards—an issue the Court discusses in detail below—does not mean that federal question jurisdiction is lacking, but rather goes to the merits of Plaintiffs' claim. *See, e.g., Hudson Riverkeeper Fund, Inc. v. Orange & Rockland Utilities, Inc*., 835 F. Supp. 160, 164 (S.D.N.Y. 1993) ("This Court has subject matter jurisdiction over a complaint filed, as is this action, pursuant to § 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1). . . . [T]he defendant argues that this is not truly an enforcement action, but merely an attempt to have this Court develop its own definition of Best Technology Available after DEC, by issuing the permit, has already determined the matter.  This argument is at most an argument that the complaint fails to state a claim and is not a valid attack on subject matter jurisdiction. We take our subject matter jurisdiction from the face of the complaint.").  In other words, the complaint alleges that Defendant is violating the Clean Water Act by discharging pollutants without an effective permit.  This confers subject matter jurisdiction.  The fact that the Court ultimately disagrees with the merits of Plaintiffs' position—based in part on the applicability of state law standards—is just that, a merits-based decision, that does not impact the Court's subject matter jurisdiction. Accordingly, dismissal is not warranted on this basis.

### 2.    **Collateral Attack Doctrine/*Burford* Abstention**

Defendant's second argument is that Plaintiffs' claim is not a proper citizen suit under the Clean Water Act, but is instead an improper collateral attack on New York's permitting decision.  (*See* Dkt. 13-1 at 14-15).  The case law underpinning the so-called "collateral attack doctrine," *Sierra Club v. Virginia Elec. & Power Co*., 145 F. Supp. 3d

601, 605 (E.D. Va. 2015), on which Defendant's argument is based, is not a model of clarity. Several courts have discussed the collateral attack doctrine as a subset of abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *See, e.g., W. Virginia Highlands Conservancy v. Monongahela Power Co.*, No. 1:11CV71, 2012 WL 11122, at *3 (N.D.W. Va. Jan. 3, 2012) (explaining that some federal courts have recognized a "general rule . . . that a district court should abstain [from exercising jurisdiction] under *Burford* if a [citizen] suit brings a collateral attack against a state-issued permit"); *Ohio Valley Env't Coal., Inc. v. Coal-Mac, Inc.*, 775 F. Supp. 2d 900, 918 (S.D.W. Va. 2011) (finding *Burford* abstention unwarranted because "Plaintiffs' claims are characterized as citizen enforcement suits under the federal CWA; they are not seeking to collaterally attack the underlying permits"). Other courts have indicated more generally that "federal judicial review of state-issued permits" is not permitted under the Clean Water Act. *Potter v. Asarco Inc.*, No. 8:96CV555, 1999 WL 33537055, at *5 (D. Neb. Apr. 23, 1999); *see also Ohio Valley Env't Coal., Inc. v. Apogee Coal Co., LLC*, 531 F. Supp. 2d 747, 754 (S.D.W. Va. 2008) (separately discussing collateral attack doctrine and *Burford* abstention).

Considering first the matter of *Burford* abstention, *"Burford* abstention respects the states' specialized and comprehensive regulatory schemes[.]" *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998). The Second Circuit has explained that pursuant to *Burford*:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the

> exercise of federal review of the question in a case and in similar cases would
> be disruptive of state efforts to establish a coherent policy with respect to a
> matter of substantial public concern.

*Id*. (quotation omitted).  *Burford* abstention "represents an extraordinary and narrow

exception to the duty of the District Court to adjudicate a controversy properly before it."

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (citation and quotation

omitted).

This Court has previously considered the applicability of *Burford* abstention in the

context of citizen suits brought pursuant to the Clean Air Act, 42 U.S.C. § 7401 *et seq.*,

and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.  See Fresh Air

for the Eastside, Inc. v. Waste Mgmt. of New York, L.L.C.*, 405 F. Supp. 3d 408, 425-30

(W.D.N.Y. 2019).  The Court explained in *Fresh Air* that "[m]any courts have declined to

apply [*Burford* abstention] to citizen suits seeking to enforce either statute's requirements."

*Id*. at 426.  However, the Court noted that some courts had found *Burford* abstention

appropriate in cases that "involved ongoing state proceedings and/or challenges to the

state's permitting process rather than a lawsuit seeking to enforce a regulated entity's legal

obligations."  *Id*. at 429; *see also Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 505 (7th

Cir. 2011) (explaining that *Burford* abstention is appropriate in citizen suits "amount[ing]

to improper collateral attacks on permitting decisions for which there were other channels

for judicial review").

Here, the Court does not find *Burford* abstention appropriate with respect to the

claims set forth on the face of the complaint.  As an initial matter, it is unclear to what

extent Plaintiffs could have brought an action in New York state court.  Defendant relies

on *Riverkeeper, Inc. v. Crotty*, 28 A.D.3d 957 (3d Dep't 2006), for the proposition that Plaintiffs could have brought a proceeding under Article 78 of New York's Civil Practice Law and Rules challenging NYSDEC's extension of the Permit.  While there is language in *Crotty* that supports this conclusion, the alleged injury in *Crotty* was different from the alleged injury in this case.  Further, the New York Court of Appeals has never recognized a cause of action under the circumstances presented here, nor is such a cause of action expressly permitted by statute or regulation.  As a result, this Court cannot definitively conclude that a New York court would have permitted an Article 78 challenge to proceed.

Moreover, the Court is cognizant of the narrowness of the *Burford* abstention doctrine.  "[T[he Supreme Court [has] made clear that federal courts should not abstain from cases simply because a 'there is a potential for conflict with state regulatory law or policy.'"  *Apogee Coal*, 531 F. Supp. 2d at 758 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 362 (1989)).  The Court is not persuaded that its resolution of the claims set forth on the face of the complaint—namely, Defendant's compliance with federal regulations in connection with its renewal application—would "substantially interfere with state decision-making."  *Id.*; *see also Coal-Mac*, 775 F. Supp. 2d at 918 (finding *Burford* abstention inappropriate because "while West Virginia has established a state-level administrative review process, this review scheme is intertwined with an issue of national concern, the regulation of water pollution").

With respect to those courts that appear to have recognized a collateral attack doctrine separate from *Burford* abstention, the Court is not persuaded that any such doctrine impacts its subject matter jurisdiction, as opposed to the merits of Plaintiffs'

claims. *See, e.g., Apogee Coal*, 531 F. Supp. 2d at 753-54 (holding that plaintiffs had sufficiently stated a claim under the Clean Water Act, while noting: "If indeed Plaintiffs are collaterally attacking an agency permitting decision, the Court should dismiss the claims. On the other hand, if Plaintiffs are pursuing a traditional citizen suit enforcement action, the defenses raised become inapposite and the claims should proceed."). In other words, this variation of the collateral attack doctrine appears to be an assessment of whether a plaintiff's claims fall within the purview of the Clean Water Act's citizen suit provisions. And, as noted above, "the 'jurisdiction' of the CWA has nothing to do with the jurisdiction of [the] court." *San Francisco Baykeeper v. Cargill Salt Division*, 481 F.3d 700, 709 n.9 (9th Cir. 2007). While the nature of Plaintiffs' claims informs the Court's assessment of the merits, it does not lead the Court to conclude it lacks subject matter jurisdiction.

### 3. Failure to Provide Notice

Defendant also contends that Plaintiffs did not comply with the Clean Water Act's notice requirements. Pursuant to the Clean Water Act, at least 60 days prior to commencing a citizen suit, "the prospective plaintiff must provide notice of its claims to the potential defendant, the EPA, and the state in which the violations allegedly occurred." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 486 (2d Cir. 2001); *see* 33 U.S.C. § 1365(b)(1). "Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date

or dates of such violation, and the full name, address, and telephone number of the person giving notice."  40 C.F.R. § 135.3(a).

On November 17, 2022, Plaintiffs sent a notice-of-intent letter pursuant to the Clean Water Act to Defendant, the EPA, and NYSDEC.  (Dkt. 10-12).  In relevant part, the notice-of-intent letter asserts that "[t]he Facility is presently discharging into Seneca Lake without a new permit. Upon information and belief, the Facility will continue discharging. As a result, Greenidge is in violation of Clean Water Act Section 301(a), 33 U.S.C. § 1311(a). Greenidge failed to timely renew its 2019 Permit, which expired on September 30, 2022. In fact, Greenidge never submitted a complete application to DEC sufficient to trigger administrative continuance of its 2019 SPDES Permit after the permit's expiration date." (*Id*. at 3).  The notice-of-intent letter goes on to explain that "Greenidge completed a short SPDES permit renewal application ("Exhibit B") comprising seven pages, and only including a few sentences worth of information about the Facility.  According to binding federal regulations, the terse application submitted by Greenidge to DEC for renewal of SPDES Permit NY001325 is incomplete."  (*Id*.).  The notice-of-intent letter then specifies that "[f]ederal regulations require an 'owner or operator of [such an existing] facility . . . whose currently effective permit expires after July 14, 2018,' to submit to [sic] 'the information required in the applicable provisions of 40 CFR § 122.21(r) when applying for a subsequent permit.' 40 CFR § 122.95(a). This provision covers applications submitted for state delegated programs. *See also id*. §§ 123.25(a)(4), (a)(36). Greenidge simply ignored this regulation."  (*Id*. at 4).

- 17 -

Defendant argues that "Plaintiffs' NOI failed to include any allegation that Greenidge's renewal application did not comply with 40 C.F.R. § 122.21(g) or that it failed to include NPDES Form 1 or NPDES Form 2C," and that "[a]s for the one alleged deficiency identified in Plaintiffs' NOI, 40 C.F.R. §122.21(r), Plaintiffs failed to provide any specificity as to the allegedly missing information that was 'applicable' and that they contend was missing from Greenidge's renewal application." (Dkt. 13-1 at 17). Defendant accordingly argues that Plaintiffs' notice-of-intent letter failed to sufficiently specify the alleged violations of the Clean Water Act.[1]

The Second Circuit "refuse[s] to allow form to prevail over substance in considering the content required of an NOI letter," and "look[s] instead to what the particular notice given may reasonably be expected to accomplish." *Catskill Mountains*, 273 F.3d at 487 (quotation omitted). "Ultimately, to determine if a private citizen-plaintiff's notice is adequate, a court must consider whether the notice letter served the purpose that Congress intended: To provide the recipient with effective, as well as timely, notice." *Foti v. City of Jamestown Bd. of Pub. Utilities*, No. 10-CV-575-RJA-HBS, 2011 WL 4915743, at *8 (W.D.N.Y. Aug. 15, 2011) (quotation and alteration omitted), *adopted*, 2011 WL 4915739

---

[1]     While Defendant raises the adequacy of the notice-of-intent letter as an issue of subject matter jurisdiction under Rule 12(b)(1), in *Catskill Mountains* the Second Circuit held that a claim that was insufficiently raised in a notice-of-intent letter was "properly dismissed under Rule 12(b)(6)." 273 F.3d at 489. Because Plaintiffs' notice-of-intent letter was attached as an exhibit to the complaint (*see* Dkt. 1 at ¶ 7; Dkt. 1-1), the Court is free to consider it under Rule 12(b)(6). *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

(W.D.N.Y. Oct. 17, 2011); *see also San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002) ("The regulation does not require . . . that plaintiffs list every specific aspect or detail of every alleged violation. . . . In short, the Clean Water Acts notice provisions and their enforcing regulations require no more than reasonable specificity." (quotations omitted)).

Applying this case law, the Court finds that Plaintiffs' notice-of-intent letter is sufficiently specific with respect to Defendant's alleged failure to submit in support of its renewal application information required by 40 C.F.R. § 122.21(r). As Defendant concedes, this alleged deficiency is expressly included in the notice-of-intent letter, and the Court finds no basis in the case law for Defendant's argument that Plaintiffs were required to identify every piece of information required by 40 C.F.R. § 122.21(r) that was allegedly not included in the renewal application.

However, the Court agrees with Defendant that Plaintiffs' notice-of-intent letter is insufficient to have put Defendant on notice of the assertion that it failed to provide the information required by 40 C.F.R. § 122.21(g) and EPA NPDES Forms 1 and 2C. These assertions are absent from the notice-of-intent letter, and the Court does not find Plaintiffs' general statement therein that "[a]ccording to binding federal regulations, the terse application submitted by Greenidge to DEC for renewal of SPDES Permit NY001325 is incomplete" (Dkt. 10-12 at 3) sufficiently specific to have allowed Defendant to "identify its own violations and bring itself into compliance voluntarily, thus making a costly lawsuit unnecessary," *Catskill Mountains*, 273 F.3d at 488 (further holding that "an NOI letter must identify with reasonable specificity each pollutant that the defendant is alleged to have

discharged unlawfully" and that "failure to do so will justify a district court's dismissing claims based on pollutants not properly noticed").

Accordingly, the Court grants Defendant's motion to dismiss to the extent that Plaintiffs' claims are based on the alleged failure to include in the renewal application information required by 40 C.F.R. § 122.21(g) and EPA NPDES Forms 1 and 2C.  The dismissal is without prejudice.  *Catskill Mountains*, 273 F.3d at 489 ("For the foregoing reasons, we hold that Catskill's claims of unpermitted thermal discharges were properly dismissed under Rule 12(b)(6).  However, those claims should have been dismissed without prejudice.  Thus we vacate so much of the judgment as dismissed Catskill's thermal discharge claims with prejudice and remand those claims with direction that they be dismissed without prejudice to refiling after full compliance with 33 U.S.C. § 1365(b)(1)(A).").

The Court further notes that in their motion for summary judgment, Plaintiffs argue that Defendant failed to comply with New York law, including by failing to submit Form NY-2C in connection with its renewal application.  (*See* Dkt. 10-3 at 18-19, 21-22).  These state-law based claims appear nowhere in the notice-of-intent letter.  To the contrary, the notice-of-intent letter specifically states that it is the alleged failure to comply with federal regulations that renders Defendant's renewal application "incomplete."  (Dkt. 10-12 at 3). Nothing in the notice-of-intent letter would have put Defendant or NYSDEC on notice of the now-claimed violations of New York state law.  *See Catskill Mountains*, 273 F.3d at 488 ("The [Clean Water Act's] notice and delay requirements are also designed to allow the enforcer of first resort, the EPA or the appropriate state agency, to bring its own

enforcement action[.]").  Accordingly, to the extent any such claims can be inferred from Plaintiffs' complaint, they are also dismissed without prejudice.[2]

### 4.  Standing

Defendant next argues that Plaintiffs lack standing to bring the instant suit.  (Dkt. 13-1 at 17).  "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citations omitted).  "To satisfy the requirements of Article III standing, plaintiffs must demonstrate '(1) [an] injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.'" *Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019) (alteration in original) (quoting *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)).  "These elements are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Id.* (quotation and alteration omitted).

"An organization can have standing to sue in one of two ways.  It may sue on behalf of its members, in which case it must show, *inter alia,* that some particular member of the organization would have had standing to bring the suit individually." *N.Y. Civil Liberties*

---

[2]     Of course, a motion for summary judgment is not a vehicle by which to assert unpled claims. *See, e.g., Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011); *W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.*, No. 20-CV-3199 (AJN), 2022 WL 1501087, at *2 (S.D.N.Y. May 11, 2022).

*Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).  This is often referred to as "associational" standing.  *Id.*  An organization may show associational standing by demonstrating "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (same).

"In addition, an organization can 'have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'"  *N.Y. Civil Liberties Union*, 684 F.3d at 294 (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).  "Under this theory of 'organizational' standing, the organization is just another person—albeit a legal person—seeking to vindicate a right.  To qualify, the organization itself must meet the same standing test that applies to individuals."  *Id.* (quotations and alteration omitted); *see also Irish Lesbian & Gay Org.*, 143 F.3d at 649 (explaining that it is "well established that organizations are entitled to sue on their own behalf for injuries they have sustained," and to make such a showing, "the organization must meet the same standing test that applies to individuals . . . by showing actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." (quotations, citation, and alterations omitted)).

Defendant argues that Plaintiffs have not adequately alleged an injury-in-fact, because the complaint "is devoid of any specific injury in fact by any specific member of any Plaintiff." (Dkt. 13-1 at 18).  Defendant further argues that causation is lacking because

"even assuming some injury in fact (which Greenidge disputes), it stems from NYSDEC's decision that Greenidge submitted a timely and sufficient renewal application." (Dkt. 13-1 at 19). The Court is unpersuaded by these arguments.

Plaintiffs have adequately demonstrated associational standing. In the context of the Clean Water Act, the Second Circuit has held that "an allegation of injury in fact is generally adequately pleaded when an association asserts that the challenged actions resulted in injury by exposing its members to increased pollutants." *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc*., 448 F.3d 138, 146 (2d Cir. 2006) (quotation omitted). Moreover, the Supreme Court has held that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc*., 528 U.S. 167, 183 (2000) (quotation omitted).

In the complaint, Plaintiffs allege that individual members of Seneca Lake Guardian "rely on the water from Seneca Lake as a water source for drinking, cooking, and bathing" and "also use the lake for swimming, kayaking, fishing, and sailing," and that Defendant's alleged unpermitted discharges of pollutants "lessen their enjoyment of recreating in, on, and around the lake" and potentially "threaten their health and safety because they drink and cook with the water." (Dkt. 1 at ¶ 14). Plaintiffs further allege that individual members of Committee to Preserve the Finger Lakes "draw water from Seneca Lake for their personal use via shore well" and "also use Seneca Lake recreationally for activities such as swimming, fishing, kayaking, viewing wildlife, and sailing," and that Defendant's alleged

- 23 -

unpermitted discharges of pollutants "lessen their enjoyment of recreating in, on, and around the lake," and potentially "threaten their health and safety because they use the water for bathing." (*Id*. at ¶ 20). Similarly, Plaintiffs allege that individual members of Sierra Club "own property on Seneca Lake and use its waters or those of the Keuka Lake Outlet for recreation, such as swimming, fishing, kayaking, or sailing," and are "concerned that the unpermitted discharge from the Greenidge Generation Station is degrading, and will continue to degrade, the quality of water in Seneca Lake and Keuka Lake Outlet, making activities like swimming and kayaking more perilous." (*Id*. at ¶ 26).

In support of their motion for summary judgment, Plaintiffs have submitted declarations from individual members that confirm these allegations. (*See* Dkt. 10-18; Dkt. 10-19; Dkt. 10-20; Dkt. 10-17; Dkt. 10-22; Dkt. 10-23; Dkt. 10-24; Dkt. 10-25). These declarations refer specifically to increased harmful algal blooms as a result of heated water discharges by Defendant, as well as damage to wildlife from water temperature changes. (*See, e.g.,* Dkt. 10-19 at ¶ 6-8; Dkt. 10-25 at ¶ 8-9). Pursuant to the case law cited above, these allegations by Plaintiffs—which are unrebutted by Defendant—are sufficient to support a finding of injury-in-fact.

Defendant's argument that "there can be no injury in fact because . . . Greenidge continues to operate in full compliance with its SPDES permit and the Complaint is devoid of any allegations to the contrary" (Dkt. 13-1 at 19) is misplaced. The gravamen of Plaintiffs' claim is that Defendant's Permit has expired. Defendant cannot assume to the contrary and then rely on that assumption to assert that there is no standing. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) ("We have cautioned against

arguments that would essentially collapse the standing inquiry into the merits, and attempts to conflate the threshold question of the plaintiff's standing under Article III with the question of whether he has a valid claim on the merits." (citations and quotations omitted)).

Turning to the issue of causation and traceability, "[t]he traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury." *Toretto v. Donnelley Fin. Sols., Inc*., 523 F. Supp. 3d 464, 471 (S.D.N.Y. 2021) (quotation omitted). The traceability requirement is "a lesser burden" than demonstrating proximate cause, and "[t]he fact that there is an intervening cause of a plaintiff's injury is not necessarily a basis to find that the injury is not 'fairly traceable' to a defendant's conduct[.]" *Id*. (citation omitted).

Defendant argues that there is no traceability in this case because "Greenidge continues to discharge pollutants because the NYSDEC determined that it submitted a timely and sufficient permit application such that its SPDES permit remains in full force and effect. Had NYSDEC reached a different conclusion, which is exactly what Plaintiffs claim, Greenidge's discharges into Seneca Lake would have ceased." (Dkt. 37 at 14). This argument fails for two reasons. First, it again presupposes that the Permit "remains in full force and effect," when that is a merits determination. Second, even if NYSDEC's actions are an intervening cause, it is still Defendant's discharges that are ultimately causing the alleged injuries. The traceability requirement is satisfied under these circumstances. And, while Defendant has not expressly challenged redressability, the relief sought (an injunction prohibiting Defendant from discharging into the Keuka Lake Outlet and Seneca Lake from the Facility) would remedy the alleged harm.

Further, while Defendant has not raised any arguments regarding the other requirements of associational standing, the Court finds that the interests that Plaintiffs seek to protect in this action are germane to their purposes.  The mission of Seneca Lake Guardian is to "protect Seneca Lake and the broader Finger Lakes region from threats to the region's environment, tourism and agricultural industries, and rural community character."  (Dkt. 10-16 at ¶ 3).  One of the purposes of the Sierra Club's regional groups in New York is to "advocate to protect the state's air, water, and remaining wild places," including "protecting the waters of New York from pollution."  (Dkt. 10-18 at ¶ 3). Committee to Preserve the Finger Lakes' mission is "to preserve the natural beauty and purity of the water in the Finger Lakes region." (Dkt. 10-17 at ¶ 3).  The interests at issue in this lawsuit are clearly germane to these purposes.  Further, nothing about the claims asserted by Plaintiffs nor the relief they seek would require any individual member to participate in the lawsuit.  Accordingly, the Court is satisfied that associational standing exists in this case.

For all these reasons, the Court finds that it has subject matter jurisdiction over the claims asserted in the complaint.  It accordingly will not dismiss the case pursuant to Rule 12(b)(1).  However, consistent with the foregoing discussion, the Court does dismiss Plaintiffs' claims without prejudice in part pursuant to Rule 12(b)(6) for failure to provide the required notice under the Clean Water Act.

**B.** **Legal Standard—Rule 12(b)(6)**

The Court turns next to Defendant's merits-based attack on the adequacy of the complaint.  "In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111.  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### 1.   <u>Adequacy of Plaintiffs' Claims</u>

Defendant argues that the complaint fails to plausibly allege that its renewal application was deficient, because Plaintiffs "focus only on requirements for a EPA-issued permit, not a State-issued permit." (Dkt. 13-1 at 20).  The Court agrees.

It is clear that where, as here, the EPA has authorized a state to administer its own permit program, state law governs the administrative continuance of a permit while a renewal application is pending.  40 C.F.R. § 122.6(d) ("States authorized to administer the NPDES program may continue either EPA or State-issued permits until the effective date of the new permits, *if State law allows*.  Otherwise, the facility or activity is operating without a permit from the time of expiration of the old permit to the effective date of the State-issued new permit." (emphasis added)).

As the Court has previously explained, New York state law sets forth the procedures for renewing a SPDES permit.  In particular, New York Environmental Conservation Law § 17-0817 states: "All SPDES permits may be administratively renewed in accordance with article seventy of this chapter."  In turn, New York Environmental Conservation Law § 70-0115(2) states:  "A permit holder may make written request to the department for the renewal, reissuance, recertification or modification of an existing permit. Such a request shall be accompanied by sufficient information supporting the request for the departmental action sought."  Subsection (2)(c) of that same provision states:  "In the case of a request for the renewal, reissuance, recertification or modification of an existing state pollutant discharge elimination system permit issued in lieu of a national pollutant discharge elimination system permit the request shall be treated as an application for a new permit."

N.Y. Env. Conserv. L. § 70-0115(c).  New York regulations provide that a renewal application "shall be made by the permittee on forms provided by" NYSDEC and submitted at least 180 days prior to the permit's application.  6 N.Y. Comp. Codes R & Regs. § 570-1.16(a).  Under the New York SAPA, submission of a "timely and sufficient" renewal application means that the existing permit "does not expire until the [renewal] application has been finally determined by the agency."  N.Y. Admin. P. Act § 401.

In other words, the question of whether or not the Permit's expiration date was extended is one of state law—namely, whether the renewal application complied with the New York Environmental Conservation Law and its associated regulations, such that it was "timely and sufficient" within the meaning of the New York SAPA.  This inquiry simply does not turn on the federal regulations cited in Plaintiffs' complaint.

Plaintiffs' arguments to the contrary miss the mark.  Plaintiffs acknowledge in their opposition to Defendant's motion to dismiss that "the Clean Water Act requires state programs to incorporate specific federal requirements into their programs[.]"  (Dkt. 23 at 9); *see also Oregon State Pub. Int. Rsch. Grp., Inc. v. Pac. Coast Seafoods Co*., 341 F. Supp. 2d 1170, 1178 (D. Or. 2004) "[B]y enacting the CWA Congress created a widespread federal system of regulation, *from which an area for state enforcement was carved*.  To avoid violating federal law, state laws and regulations must satisfy specific requirements set forth in the federal laws and regulations." (emphasis added)).  Plaintiffs similarly acknowledge in their motion for summary judgment that while "the Clean Water Act establishes requirements for permit renewal applications," those requirements "must be *incorporated into* state permitting programs[.]"  (Dkt. 10-3 at 15 (emphasis added)).

Simply put, the fact that New York's permit program is required to include standards that are at least as stringent as those contained in the relevant federal regulations does not mean—as both Plaintiffs and Riverkeeper assume—that it is those federal regulations that provide the rule of decision in this case, and not New York's laws and regulations.

At oral argument, Plaintiffs made clear that they are not contesting that New York's program has incorporated the federal requirements at issue and are not arguing that New York's SPDES program violates federal law.  Accepting this concession by Plaintiffs, the federal regulations on which they rely simply do not provide the governing standard.  New York law and regulations—which have incorporated the necessary legal requirements as set forth in federal law—provide the governing standard.  This is particularly the case where 40 C.F.R. § 122.6(d) expressly states that it is state law that is determinative of whether or not a state-issued permit may be administratively continued while a renewal application is pending.

Plaintiffs' complaint does not allege any failure by Defendant to comply with New York law and regulations in connection with its renewal application.  To the contrary, Plaintiffs have cited only federal regulations and the failure to submit forms promulgated by the EPA.  (*See* Dkt. 1 at ¶¶ 121-129).   This does not plausibly state a claim, because the sufficiency of Defendant's renewal application is not measured by these authorities.

Moreover, to the extent Plaintiffs now argue that a claim that Defendant's renewal application was deficient under New York law can be inferred from their complaint (and have made arguments regarding alleged violations of New York law in connection with their motion for summary judgment), the Court has already determined that they failed to

provide the requisite notice of any such state law violations.  Thus, Plaintiffs' complaint is subject to dismissal in its entirety under Rule 12(b)(6).

### C.       NYSDEC as Necessary Party (Rule 12(b)(7))

Defendant also seeks dismissal under Rule 12(b)(7), on the basis that Plaintiffs have failed to name a necessary party—specifically, NYSDEC.  (Dkt. 13-1 at 21-22).  Defendant acknowledges that "the general rule is that 'federal and state agencies administering federal environmental laws are not necessary parties in citizen suits to enforce the federal environmental laws'" (*id*. at 22 (quoting *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res*., *Inc.*, 299 F.3d 1007, 1014 (9th Cir. 2002))), but argues that this is an unusual case because "Plaintiffs' claim here is a direct challenge to NYSDEC's permitting decision that Greenidge submitted a timely and sufficient renewal application" (*id*.).  Because the Court has already determined that dismissal is warranted under Rule 12(b)(6), it need not and does not reach this argument.

## III.   Remaining Motions

Having determined that Plaintiffs' claims must be dismissed, the Court denies as moot Plaintiffs' motion to opt out of ADR and the parties' competing motions for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss (Dkt. 13) to the extent that it dismisses the complaint without prejudice for failure to state a claim. The Court denies as moot Plaintiffs' motion for summary judgment (Dkt. 10), Plaintiffs'

motion to opt out of ADR (Dkt. 11), and Defendant's cross-motion for summary judgment

(Dkt. 24).  The Clerk of Court is directed to close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  August 21, 2023
        Rochester, New York